UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW PERRONG,

    Plaintiff,

v.                                              Case No: 8:20-cv-1905-JSM-TGW

TOTAL INSURANCE BROKERS, LLC,
CONSUMER DIRECT MEDIA LLC, and
AIFY LLC,

    Defendants.
_____

## ORDER

THIS CAUSE comes before the Court on Defendant Total Insurance Brokers, LLC's Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, Strike Plaintiff's Class Allegations (Dkt. 29), Plaintiff's Opposition (Dkt. 41), Defendant Consumer Direct Media LLC's Motion to Dismiss and/or Motion to Strike Plaintiff's First Amended Complaint (Dkt. 39), Plaintiff's Opposition (Dkt. 51), and Defendant AIFY LLC's Motion to Dismiss and/or Motion to Strike Plaintiff's First Amended Complaint (Dkt. 52). Upon review of these filings, the Court denies Defendants' motions because Plaintiff has standing to pursue his claims and the Telephone Consumer Protection Act ("TCPA") was not unconstitutional at the time the calls were made to Plaintiff's cell phone. The Court also denies Defendant Total Insurance Brokers' alternative request to strike the class allegations because its argument that Plaintiff is an inadequate class representative is premature.

# BACKGROUND

Plaintiff Andrew Perrong brings this action under the TCPA alleging that Defendant Total Insurance Brokers, LLC ("Total Insurance") hired Defendant Consumer Direct Media LLC ("Consumer Direct") to generate new customers for Total Insurance. Consumer Direct hired Defendant GO Dynamiq a/k/a Artificial Intelligence for You ("AIFY") to place pre-recorded telemarketing calls to individuals' cell phones, including Perrong's cell phone, without their prior consent.

The amended complaint alleges that Total Insurance is in the health insurance marketing business. Total Insurance relies on telemarketing to generate new customers. Total Insurance hires third parties, like Consumer Direct and AIFY, to conduct this telemarketing, which includes the use of pre-recorded messages on personal cell phones.

Perrong's cell phone number, 215-338-XXXX, is assigned to a telephone service provider that charges Perrong for each call he receives. On July 6, 2020, and July 21, 2020, Perrong received a call from AIFY that began with the following pre-recorded message regarding health insurance:

> Please listen carefully. Additional insurance benefits are now available for recipients of Medicare Part A and Part B. This will include dental, vision, and prescriptions that were not previously covered. To speak with your representative press five on your phone now. Thank you.

(Dkt. 20 at ¶¶ 24-25). Perrong did not consent to receive pre-recorded messages from any of the Defendants prior to the July 6, 2020 call.

The amended complaint alleges that the caller was not identified on the recording for either pre-recorded message. To learn the identity of the company calling him, Perrong

2

"engaged the telemarketer and learned their [sic] identity." *Id.* at ¶ 27. Specifically, "[o]n the July 6, 2020 call, Mr. Perrong eventually spoke with Jeremiah Norton, an employee of Total Insurance." *Id.* at ¶¶ 28-30. On the July 21, 2020 call, "Mr. Perrong spoke with Dione Dennard, an employee of the Defendant." *Id.* at ¶ 31. On both calls, the employees attempted to sell Total Insurance's services. Perrong and "others who received these calls were temporarily deprived of legitimate use of their phones and their privacy was invaded." *Id.* at 33.

The amended complaint alleges that Total Insurance " knowingly and actively accepted business that originated through the illegal telemarketing calls from Consumer Direct Media and AIFY" and Total Insurance "did not audit the telemarketing practices of Consumer Direct Media or AIFY." *Id*. at ¶¶ 38-40.

This matter is at issue upon Defendants' motions to dismiss. Total Insurance argues that Perrong lacks standing because he invited the robocalls under false pretenses. Related to this argument, Total Insurance contends that Perrong's dishonesty renders him an inadequate class representative, which would require the Court to strike the class allegations. Finally, Total Insurance argues that the TCPA was unconstitutional during the relevant time. Consumer Direct and AIFY filed motions to dismiss that indicated their joinder and adoption of Total Insurance's arguments. These filings are now ripe for the Court's disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a complaint to be dismissed for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg,*

*Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are based solely on the allegations in the complaint and the court must accept the complaint's allegations as true. *Id.* Where there is a factual attack on subject matter jurisdiction, the court may consider extrinsic evidence such as deposition testimony and affidavits. *Id.*

A district court has subject matter jurisdiction if the claims present a case or controversy under the Constitution and there is standing. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012). A plaintiff bears the burden of proving standing, which requires a showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000)).

With respect to establishing an injury related to a TCPA violation, the Eleventh Circuit recently explained the standard. *See Grigorian v. FCA US LLC*, 838 F. App'x 390, 393 (11th Cir. 2020). In *Grigorian*, the Eleventh Circuit stated:

> Under the TCPA, we have held that a plaintiff suffers an injury in fact when she receives an unwanted fax that occupies the fax machine during the time the unwanted fax is being sent and shoulders the cost of printing the unsolicited fax. *See Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017). And, like a fax, an unwanted phone call is intrusive—in some ways more intrusive, "since a ringing phone requires immediate attention," and the recipient of the call "may also bear the cost of telephone minutes." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1269–70 (11th Cir. 2019). Thus, because an unwanted call "uses some of the phone owner's time and mental energy, both of which are precious," the recipient of "more than one unwanted telemarketing call" has suffered an injury under the TCPA. *Id.* (quotation marks omitted); *see also Glasser v. Hilton Grand Vacations*

*Co., LLC*, 948 F.3d 1301, 1305–06 (11th Cir. 2020) (holding that plaintiffs who received "over a dozen unsolicited phone calls to their cell phones" established injury-in-fact).

*Id.*

## DISCUSSION

The amended complaint adequately alleges Perrong's standing because he received more than one unwanted robocall. He also avers that his telephone service provider charges him for each call he receives. Total Insurance's motion relies on facts outside the pleadings to attack Perrong's standing. Total Insurance argues that Perrong is a "professional" TCPA plaintiff, Perrong is dishonest because he invited the communications under false pretenses, and, as a result of this dishonesty, Perrong was not actually injured and is not in the zone of interest that Congress intended to protect under the TCPA. As stated above, because Total Insurance's motion is asserted under Rule 12(b)(1), the Court may consider this extrinsic evidence.

In response, Perrong provided a Declaration stating that his telephone number, 215-338-XXXX, is on the National Do-Not-Call Registry and has been since 2017. He has never removed his telephone number from the National Do-Not-Call Registry, it is registered in his name, and he pays the bills for it. *Id.* As a law student and individual that has filed a series of TCPA cases, along with having a technical background and an understanding of telephony, Perrong has insight into the methods telemarketers use to conceal their identities, and he has developed methods of identifying "those scammers who place telephone calls to him in violation of the TCPA." (Perrong's Declaration at ¶ 7).

Perrong states that his experience with Defendants "was no different." According to his Declaration:

> One method used by the initial caller in this case was to make calls using the caller ID 231-751-0558 and the caller ID name "Walloon Lake MI," and transmit a generic pre-recorded message. Therefore, identifying the origin of the caller would have been nearly impossible without engaging the caller in their telemarketing script to obtain the true name of the company who called me.
>
> To be clear, I did nothing to precipitate this illegal pre-recorded message to my number. I am not a senior citizen, nor on Medicare but nevertheless received the call. I did not want the calls, but they were placed to me. I was charged for the calls, and they were highly annoying and disruptive.
>
> This is an extremely common practice in the telemarketing industry, with telemarketers often blast calling numbers with fake caller ID information and fake names, such as "Eric" from "Health Insurance" to conceal their true identities and avoid liability under the law for making telemarketing calls.
>
> In cases such as this, it is necessary to feign interest in the telemarketer's script to ascertain their true identity and what product or services they are selling. Otherwise, the callers are impossible to identify and hold accountable for their telemarketing actions.

*Id.* at ¶¶ 8-11.

"Defendants' efforts to conceal their identities required extensive efforts from [Perrong] to identify the illegal callers." Specifically:

> On July 6, 2020 at 11:05 a.m., I received a pre-recorded call using the caller ID 231-751-0558 and the caller ID name "Walloon Lake MI," on 215-338-XXXX regarding Medicare coverage that did not identify the caller.
>
> In order to identify the legal entity behind this call, I interacted with someone who spoke with an accent and whom I suspected was with a foreign call center who identified himself as "Eric" from "Health Insurance." I interacted with this person as I understood from my past experience dealing with illegal telemarketers that a transfer would then be made to the entity responsible for the call, who could then be identified and held to account for its illegal actions, but only if I provided this person with qualifying information.

> I suspected from the outset that "Eric" from "Health Insurance" was a fictitious name designed to disguise the entity of the entity legally responsible for the illegal telemarketing at issue. This assumption proved correct.
>
> I also suspected that if I gave my real information at the outset of this initial illegal telemarketing call that the entity who eventually received the transfer would simply lie and deny any connection with the original call, claim that I called them, terminate the call without identifying themselves, or in some way claim that I welcomed or invited the calls.
>
> For this reason, and in anticipation of this conduct, I used a pseudonym that had the indicia of the call, in this case the name displayed on my Caller ID, in order to track the call through multiple transfers or illegal contacts. Otherwise, it may have been impossible to trace back the call to its source, which here was Consumer Direct Media and AIFY.
>
> Even though I informed agents of Total Insurance Brokers that I was "Andrew" on subsequent calls, I received another prerecorded call on July 21, 2020 at 12:52 p.m. using the caller ID 530-344-4967 and the caller ID name "Placerville CA," on 215-338-XXXX that transmitted an identical message to the call on July 6.
>
> Again, during that call I spoke with someone named "Eric" (again) with "Health Insurance" (again). I provided the name "Jason Placer" as a unique identifier that bore the indicia of the unsolicited call to be able to track the source of this call for the same reasons.

*Id.* at ¶¶ 12-18.

The Court concludes Perrong's actions did not invite the communications as Total Insurance contends because there is no evidence that Perrong solicited the initial robocalls. There is also no evidence that he consented to them. And, although the Court is not condoning Perrong's actions of providing a fake name to receive more information about the source of the call, this occurred after the initial annoyance of receiving the calls in the first place. In other words, setting aside that Perrong is a "professional" TCPA plaintiff, Perrong

7

was personally injured to the extent that he received two unsolicited robocalls to his personal cell phone and was charged by his provider for these two calls. This is sufficient to establish injury based on the Court's reading of the Eleventh Circuit opinions.

Notably, the cases Total Insurance relies upon in its motion to dismiss do not support a different conclusion. As Perrong points out in his response, "the decisions as to standing and adequacy were made based on a full evidentiary record at summary judgment and class certification, respectively." (Dkt. 41 at 11) (listing cases).

Perrong also persuasively argues that there is nothing wrong with a plaintiff—who receives an unwanted robocall—engaging the caller in order to determine the caller's identity. The following language is compelling from a district court analyzing a similar motion to dismiss to the extent that the defendants argued that the plaintiff was a "professional TCPA plaintiff" who filed numerous suits under the TCPA and suffered no real injury because he essentially welcomed the communications:

> The calls show that Cunningham appears to have been very good at eliciting information from the callers that he could later use in this lawsuit, which the RRMS Defendants suggest demonstrates that he was cultivating a TCPA claim. Cunningham's Second Amended Complaint, though, openly admits that the reason he eventually accepted one of the calls was "to ascertain the identity of the party placing" them, and Cunningham has explained his sleuthing in significant detail himself. (Doc. No. 57 at ¶ 13.) His later pleadings are entirely straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ("The only reason why the Plaintiff faked interest in the calls was to identify the seller of goods/services that was behind the calls."))… [i]t is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they— presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA. Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no "amateurs only rule."

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D.

Tenn. 2017); *see also* Dkt. 41 at 8 (listing the following persuasive authority: *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."); *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general"); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) ("It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur. This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.").

Also, with respect to Total Insurance's argument that any injury was caused by AIFY, this may prove true after discovery, but the Court cannot rule on this matter at this juncture. The amended complaint alleges that Total Insurance used AIFY as its agent to market Total Insurance's services and Total Insurance never audited AIFY to ensure that it complied with the TCPA. This is sufficient at the pleading stage.

Total Insurance's alternative argument to strike the class allegations because Perrong's dishonesty renders him an inadequate class representative is also premature. First, Perrong readily admits that he used fake information to determine the true source of the robocalls. As

stated above, this is not necessarily dishonest and Perrong's actions did not invite the initial robocalls. Second, and most important, Perrong has not yet filed a motion to certify this case as a class action and the current record is incomplete to allow the Court to decide whether any of Rule 23's requirements will be met here. The class representative's adequacy will be part of that inquiry and Total Insurance may renew this argument once the motion to certify is filed and the record is further developed.

Finally, Total Insurance's argument that the TCPA was unconstitutional at the time the calls were placed is denied. To briefly summarize, on July 6, 2020, the Supreme Court addressed the 2015 amendment to the TCPA in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020) ("*AAPC*"). The Supreme Court concluded that the robocall restriction under § 227(b)(1)(A)(iii), with the government-debt exception, is unconstitutional because it favors speech made for the purpose of collecting government debt over other speech.

Total Insurance's motion largely relies upon this Court's prior order in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536, *3 (M.D. Fla. Dec. 11, 2020), which held that "federal courts lack subject matter jurisdiction over alleged violations from enactment of the 2015 amendment" to the date of the *AAPC* decision). But the Court recently entered an order in *Boisvert v. Carnival Corporation*, Case No. 8:20-cv-02076-JSM, at Dkt. 30 (M.D. Fla. Mar. 12, 2021), that departed from the Court's earlier order in *Hussain*. In *Boisvert,* the Court noted that since its order in *Hussain*, "every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b)

claims post-*AAPC*"). For efficiency, the Court adopts its analysis of this issue from *Boisvert* and denies Defendants' motions for the same reasons.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Total Insurance Brokers, LLC's Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, Strike Plaintiff's Class Allegations (Dkt. 29) is denied.

2. Defendant Consumer Direct Media LLC's Motion to Dismiss and/or Motion to Strike Plaintiff's First Amended Complaint (Dkt. 39) is denied.

3. Defendant AIFY LLC's Motion to Dismiss and/or Motion to Strike Plaintiff's First Amended Complaint (Dkt. 52) is denied.

4. Defendants shall file their answers to the amended complaint within fourteen (14) days from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this 2nd day of April, 2021.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record