## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDREW PERRONG,

     Plaintiff,                                    Case No. 8:20-cv-01905

vs.

TOTAL INSURANCE BROKERS, LLC,
*et al.*

     Defendants,

_____/

### DEFENDANT TOTAL INSURANCE BROKERS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Total Insurance Brokers, LLC ("TIB"), by and through its undersigned counsel, submits its Answer and Affirmative Defenses in response to the putative First Amended Class Action Complaint ("Complaint") filed by Plaintiff Andrew Perrong ("Plaintiff") (Dkt. 20). TIB expressly denies any allegations not specifically admitted herein, and states as follows:

1. As the Supreme Court explained recently, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

**ANSWER:**   Paragraph 1 of the Complaint contains dicta that is immaterial and should be stricken and/or legal conclusions to which no response is required. To the extent a response is required, TIB states that the referenced case speaks for itself, denies that it has any relevance to the TIB, and otherwise denies any allegations in Paragraph 1.

2. Plaintiff Andrew Perrong brings this action under the TCPA alleging that

Defendant Total Insurance Brokers, LLC ("Total Insurance") hired Consumer Direct Media LLC ("Consumer Direct") to generate new customers for them. Consumer Direct hired GO Dynamiq a/k/a Artificial Intelligence for You ("AIFY"), who sent Mr. Perrong and others pre- recorded telemarketing calls for purposes of promoting their goods and services without his prior express written consent.

**ANSWER:** TIB admits that Plaintiff purports to bring an individual action pursuant to the Telephone Consumer Protection Act ("TCPA") but denies that Plaintiff is entitled to any relief against TIB and otherwise denies any allegations in Paragraph 2.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

**ANSWER:** TIB admits that Plaintiff purports to bring this claim as a class action, but denies that Plaintiff is entitled to any relief against TIB nor is this case suitable as a class action under Fed. R. Civ. P. 23 and the applicable law.  TIB further denies that Plaintiff is entitled to represent the class.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:** TIB denies the allegations set forth in Paragraph 4 of the Complaint.

**Parties**

5. Plaintiff Andrew Perrong resides in Pennsylvania.

**ANSWER:** TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint and therefore denies them.

6. Defendant Total Insurance Brokers, LLC is a Florida limited liability company with its principal place of business in this District.

**ANSWER:** TIB admits that it is a Florida limited liability company with its principal place of business in this District.

7. Defendant Consumer Direct Media LLC is a Massachusetts limited liability company.

**ANSWER:** Admitted.

8. Defendant AIFY LLC is a Nevada limited liability company.

**ANSWER:** Without knowledge; therefore, denied.

## Jurisdiction & Venue

9. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

**ANSWER:** Paragraph 9 consists of conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB admits that the Court has federal-question subject-matter jurisdiction over Plaintiff's claims, but TIB denies all of Plaintiff's claims to the extent not specifically admitted herein.

10. [Filed under seal.]

**ANSWER:** Paragraph 10 consists of conclusions of law and legal argument to which no response is required. To the extent a response is required, denied.

11. Similarly, AIFY LLC is a vendor and sub-agent of Consumer Direct Media LLC under the agreement it had with Total Insurance Brokers and has a reasonable expectation of having to litigate any disputes in this District.

**ANSWER:** Denied.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant Total Insurance Brokers is a resident of this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because the telemarketing campaign that is the subject of this lawsuit was organized in Florida.

**ANSWER:** Paragraph 12 consists of conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB admits that this Court is the proper venue for Plaintiff's claims, but TIB denies all of Plaintiff's claims to the extent not specifically admitted herein.

## Statutory Background

THE TCPA

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

ANSWER: Paragraph 13 consists of Plaintiff's characterization of the TCPA and conclusions of law and legal argument to which no response is required and that is immaterial and should be stricken. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to the TIB, and otherwise denies any allegations in Paragraph 13.

14. The TCPA makes it unlawful to (1) make calls to cellular telephone lines or lines for which the called party is charged for the call using an "automatic telephone dialing system," or (2) make calls to any cellular line, line for which the called party is charged for the call, or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

ANSWER: Paragraph 14 consists of Plaintiff's characterization of the TCPA and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB otherwise denies any allegations in Paragraph 14.

15. These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

ANSWER: Paragraph 15 consists of Plaintiff's characterization of Congress's purported findings and conclusions of law and legal argument to which no response is required and that is immaterial and should be stricken. To the extent a response is required, TIB denies any allegations in Paragraph 15.

**Factual Allegations**

16. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:** Paragraph 16 consists of Plaintiff's conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore denies them.

17. Total Insurance is in the health insurance marketing business.

**ANSWER:** Denied as stated. TIB is engaged in the business of selling insurance products and technology platforms to help agencies market insurance products. While it is admitted that marketing is sometimes part of the sale process, TIB's primary business is not marketing insurance products.

18. To generate new customers, Total Insurance relies on telemarketing.

**ANSWER:** TIB states that it may from time to time engage in certain lawful telemarketing as part of its business.

19. However, this telemarketing is often conducted by third parties hired by Total Insurance, such as AIFY and Consumer Direct Media.

**ANSWER:** Denied.

20. The telemarketing includes the use of pre-recorded messages.

**ANSWER:** Denied.

21. Mr. Perrong's number, 215-338-XXXX, is assigned to a telephone service for which Mr. Perrong is charged for each call.

**ANSWER:** TIB is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21; therefore, denied.

22. Mr. Perrong receives a ring charge for each call placed to him on that line.

**ANSWER:** TIB is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22; therefore, denied.

23. Mr. Perrong is also charged per minute for each call placed to him on that line.

**ANSWER:** TIB is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23; therefore, denied.

24. On July 6 and July 21, 2020, among other days, AIFY called Mr. Perrong on his number 215-338-XXXX.

**ANSWER:** TIB denies the allegations in Paragraph 24 of the Complaint.

25. The calls on July 6 and July 21 began with the following pre-recorded message regarding health insurance:

> Please listen carefully. Additional insurance benefits are now available for recipients of Medicare Part A and Part B. This will include dental, vision, and prescriptions that were not previously covered. To speak with your representative press five on your phone now. Thank you.

**ANSWER:** TIB is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25; therefore, denied.

26. The caller was not identified on the recording for either message.

**ANSWER:** TIB is without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26; therefore, denied.

27. To learn the identity of the company calling him, Mr. Perrong engaged the telemarketer and learned their identity.

**ANSWER:** TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies them.

28. On the July 6, 2020 call, Mr. Perrong eventually spoke with Jeremiah Norton, an employee of the Total Insurance.

**ANSWER:** Admitted that Plaintiff spoke with Jeremiah Norton on July 6, 2020, but in the relevant recording, Plaintiff—a serial TCPA litigant[1]—used a fake name to misrepresent his

---

[1] *See* Dkt. 68 at 1, *Perrong v. Golden Rule Ins. Co.,* Case No. 19-cv-01940 (S.D. Ind.) (TIB insurance company stating "Perrong has used **16 different phone numbers** since 2015 and filed a whopping **74 TCPA lawsuits** in the same time period") (emphasis in original); *see also id.* at Dkt. 88 at 2 (order rejecting plaintiff's request for a protective order to

true identity. Plaintiff falsely identified himself as "Jason Walloon"—the last name of which he specifically spelled out—before claiming he had been called at Plaintiff's number and that it was the best number for contacting him.[2]

29. Mr. Perrong then received an e-mail from Mr. Norton that was sent from jnorton@tibhealth.com promoting TIB's health insurance products.

**ANSWER:** Admitted that—based upon Plaintiff's misrepresentations—TIB sent an e-mail to "Jason.Walloon@deletext.com," an e-mail address that Plaintiff provided on the recorded call and that Plaintiff specifically spelled out on the call when inviting emails to that address in order to receive more information on health insurance as discussed and requested by Plaintiff on the call.

30. That is an e-mail address and domain owned by the Defendant.

**ANSWER:** TIB admits that it owns the e-mail address and domain set forth in Paragraph 30 of the Complaint.

31. On the July 21, 2020 call, Mr. Perrong spoke with Dione Dennard, an employee of the TIB.

**ANSWER:** Admitted that Plaintiff spoke with TIB on July 21, 2020, but in the relevant recording, Plaintiff—a serial TCPA litigant—used a fake name to misrepresent his true identity. Plaintiff falsely identified himself as "Jason Placer" before confirming that he was calling from Plaintiff's number and granting permission to call him at this number in the future.[3]

---

limit access to portions of his IP address where "Mr. Perrong contends that if he … must produce his full IP addresses to Golden Rule, 'the information could readily be used by entities involved in generating the Perrong lead [the lead that resulted in the solicitation of Golden Rule's insurance product(s) to him] to manufacture evidence that Plaintiff submitted his information on a website to solicit the call at issue in this case.'").

[2] Plaintiff claimed on the call to have Medicare Parts A and B. Upon information and belief, this is also false as Plaintiff is believed to be approximately 23 years of age. *See* Christian Hetrick, *Meet the robocall avenger: Andrew Perrong, 21, sues those pesky callers for cash*, The Philadelphia Inquirer, Nov. 2, 2018, *available at* https://www.inquirer.com/philly/business/robocall-lawsuits-verizon-citibank-andrew-perrong-20181102.html.

[3] Plaintiff also claimed on this call to have Medicare Parts A and B and that he "has been on Medicare since he turned 65." Upon information and belief, this is also false as Plaintiff is believed to be approximately 23 years of age. *See* Christian Hetrick, *Meet the robocall avenger: Andrew Perrong, 21, sues those pesky callers for cash*, THE

32. On both calls, the employees of the Total Insurance attempted to sell insurance services.

**ANSWER:** Admitted that TIB offered to provide further information on and help Plaintiff obtain health insurance based upon Plaintiff's request; otherwise, denied.

33. Mr. Perrong, and others who received these calls, were temporarily deprived of legitimate use of their phones and their privacy was invaded.

**ANSWER:** TIB denies the allegations set forth in Paragraph 33 of the Complaint.

**Total Insurance Broker's Liability for Consumer Direct and AIFY's Conduct**

34. The FCC has explained for over 25 years that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

**ANSWER:** Paragraph 34 consists of Plaintiff's characterization of what "[t]he FCC has explained" and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to TIB, and otherwise denies any allegations in Paragraph 34.

35. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Total Insurance Brokers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

---

PHILADELPHIA INQUIRER, Nov. 2, 2018, *available at* https://www.inquirer.com/philly/business/robocall-lawsuits-verizon-citibank-andrew-perrong-20181102.html.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**ANSWER:** Paragraph 35 consists of Plaintiff's characterization of what "[t]he FCC confirmed" and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to TIB, and otherwise denies any allegations in Paragraph 35.

36. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer (unlike here), a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

**ANSWER:** Paragraph 36 consists of Plaintiff's characterization of what an "FCC Ruling held" and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to TIB, and otherwise denies any allegations in Paragraph 36.

37. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

**ANSWER:** Paragraph 37 consists of Plaintiff's characterization of what an "FCC Ruling further clarifies" and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to TIB, and otherwise denies any allegations in Paragraph 37.

38. Total Insurance Brokers is legally responsible for ensuring that Consumer Direct Media and AIFY complied with the TCPA, even if Total Insurance Brokers did not itself make the calls.

**ANSWER:** Denied.

39. Total Insurance Brokers knowingly and actively accepted business that originated through the illegal telemarketing calls from Consumer Direct Media and AIFY.

**ANSWER:** Denied.

40. Total Insurance Brokers did not audit the telemarketing practices of Consumer Direct Media or AIFY.

**ANSWER:** Admitted.

41. [Filed under seal.]

**ANSWER:** Denied.

42. Furthermore, Total Insurance Brokers accepted the business from illegal calls from Consumer Direct Media and AIFY, even while it was being sued in another TCPA lawsuit for the calling conduct of Consumer Direct Media and AIFY.

**ANSWER:** Denied.

43. Moreover, Total Insurance Brokers maintained interim control over Consumer Direct Media and AIFY's actions.

**ANSWER:** Denied.

44. [Filed under seal.]

**ANSWER:** Denied.

45. [Filed under seal.]

**ANSWER:** Denied.

46. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**ANSWER:** Paragraph 46 consists of Plaintiff's characterization of what an "FCC Ruling states" and conclusions of law and legal argument to which no response is required. To the extent a response is required, TIB states that the TCPA speaks for itself and refers to the statute and its regulations for their true and complete contents. TIB denies that the referenced language has any relevance to TIB, and otherwise denies any allegations in Paragraph 46.

## Class Action Allegations

47. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

**ANSWER:** Paragraph 47 is Plaintiff's characterization of Plaintiff's lawsuit, to which no response is required. To the extent a response is required, TIB admits that Plaintiff purports to bring this action on behalf of others, but denies that this action meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, and otherwise denies any allegations in Paragraph 47.

48. The proposed class are tentatively defined as:

Plaintiff and all persons within the United States: (1) to whose cellular telephone number or number on which they are charged for the call, AIFY or Consumer Direct Media, or a third party on their behalf, placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using the same or substantially similar pre- recorded message used to place telephone calls to Plaintiff (4) that was, or could have been, transferred to Total Insurance Brokers.

**ANSWER:** Paragraph 48 is Plaintiff's narrative description of certain proposed classes, to which no response is required. To the extent a response is required, TIB admits that Plaintiff

11

purports to bring this action on behalf of others, but denies that this action meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, and otherwise denies any allegations in Paragraph 48.

49.     The Plaintiff is a member of the class.

**ANSWER:**   Paragraph 49 of the Complaint sets out legal conclusions to which no response is required.  TIB denies the allegations in Paragraph 49 and further denies that this case is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

50.     Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

**ANSWER:**   Paragraph 50 is Plaintiff's description of exclusions from certain proposed classes, to which no response is required.  To the extent a response is required, TIB admits that Plaintiff purports to bring this action on behalf of others, but denies that this action meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, and otherwise denies any allegations in Paragraph 50.

51.     Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

**ANSWER:**   TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint and therefore denies them.  TIB further denies that this case is appropriate for a class action or that Plaintiff is entitled to represent the class.

52.     Based on the automated nature of telemarketing campaigns, there are likely thousands of class members. Individual joinder of these persons is impracticable.

**ANSWER:**   TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint and therefore denies them.  TIB further

denies that this case is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

53. There are questions of law and fact common to Plaintiff and the proposed class, including:

    a. Whether the Defendants used a pre-recorded message to send telemarketing calls;

    b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether Total Insurance Broker is liable for AIFY and Consumer Direct Media's conduct;

    d. Whether the Defendants' TCPA violations were negligent, willful, or knowing; and

    e. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

**ANSWER:** Paragraph 53, and its subparts a. through e., of the Complaint set out legal conclusions as to which no response is required. To the extent a response is required, TIB denies the allegations in Paragraph 35, and its subparts a. through e., of the Complaint and further denies that this action is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

54. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

**ANSWER:** Paragraph 54 of the Complaint sets out legal conclusions as to which no response is required. To the extent a response is required, TIB denies the allegations in Paragraph 54 of the Complaint and further denies that this action is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

55. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class and he is represented by counsel skilled and experienced in litigating TCPA class actions.

**ANSWER:** Paragraph 55 of the Complaint sets out legal conclusions as to which no response is required. To the extent a response is required, TIB denies the allegations in Paragraph 55 of the Complaint and further denies that this action is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

56. The Defendants' actions are applicable to the class and to Plaintiff.

**ANSWER:** Denied.

57. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

**ANSWER:** Paragraph 57 of the Complaint sets out legal conclusions as to which no response is required. To the extent a response is required, TIB denies the allegations in Paragraph 57 of the Complaint and further denies that this action is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

58. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

**ANSWER:** TIB lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint and therefore denies them. TIB further denies that this case is appropriate for a class action or that Plaintiff is entitled to represent the proposed class.

**Legal Claims**

**Count One:**
**Violation of the TCPA's provisions**
**prohibiting pre-recorded calls to cell phones**

59. The Defendants violated the TCPA by initiating a pre-recorded call to Plaintiff's telephone number assigned to a cellular telephone service without prior express written consent,

14

or by the fact that such a call was made on their behalf.

**ANSWER:** TIB denies the allegations contained in Paragraph 59 of the Complaint.

60. The Defendants' violations were willful or knowing.

**ANSWER:** TIB denies the allegations contained in Paragraph 60 of the Complaint.

61. The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendants from using pre-recorded messages to call individuals, absent an emergency circumstance.

**ANSWER:** The TCPA speaks for itself. TIB denies that Plaintiff and any purported putative class is entitled to any alleged injunctive relief and otherwise denies the remaining allegations contained in Paragraph 61 of the Complaint.

## Relief Sought

Plaintiff requests the following relief:
    A. That the Court certify the proposed class;
    B. That the Court appoint Plaintiff as class representative;
    E. That the Court appoint the undersigned counsel as counsel for the class;
    F. That the Court enter a judgment permanently enjoining the Defendant from using a pre-recorded message, absent an emergency circumstance.
    G. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and
    H. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**ANSWER:** TIB denies that Plaintiff is entitled to any relief whatsoever. TIB seeks dismissal of the Complaint, requests that various immaterial allegations in the Complaint be stricken, and requests that this Court enter judgment in TIB's favor and against Plaintiff and award TIB its attorneys' fees, costs, and all other appropriate relief.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
(Health Care Messages)

TIB alleges, on information and belief, that the calls referenced in Plaintiff's Complaint deliver "health care message[s] under 47 C.F.R. § 64.1200(a)(2) and (a)(3)(v). TIB is not liable to the extent that the TCPA allows such calls delivering "health care messages" without consent, or with only certain limited consent, of the called party.

### Second Affirmative Defense
(No causation, intervening or superseding causation)

Plaintiff's Complaint, and the purported cause of action set forth therein, is barred because Plaintiff's purported injury has been caused, in whole or in part, by Plaintiff's own conduct, actions, omissions, delay or failure to act. Plaintiff and the putative class members claims are barred in whole or in part to the extent they were caused by themselves, their agents, and/or intervening or superseding causes or circumstances, or by third parties for whom TIB does not control and/or is not responsible.

### Third Affirmative Defense
(Consent)

Plaintiff's Complaint, and the purported cause of action set forth therein, is barred because Plaintiff consented to all conduct surrounding the occurrences alleged in the Complaint, and, specifically, is barred to the extent that Plaintiff and/or any of the putative class members provided prior express consent for the complained-of calls, as set forth in 47 U.S.C. § 227(b)(1). Further, any claims are barred because the calls involved healthcare or emergency messages, permitted under the TCPA or consented to by Plaintiff and the putative class members.

### Fourth Affirmative Defense
(Equitable allocation, set-off, comparative fault of third parties)

Any purported damage, loss or liability must be reduced and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than TIB, including other parties in this case and/or third parties, under the doctrines of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

### Fifth Affirmative Defense
(Contributory fault, comparative fault, assumption of risk by claimants, estoppel, waiver)

Plaintiff and the putative class members waived, ratified, are estopped, and/or are barred from obtaining any relief because they accepted, invited, consented and/or agreed to the purported calls and their alleged losses and damages were proximately caused by their own actions or omissions, including but not limited to using, advertising, or otherwise promoting or inviting calls to their phone number, or by the actions or omissions of third parties.  Plaintiff and the putative class members claims are barred in whole or in part by the applicable terms and conditions and/or limitations of liability contained in any applicable agreements.

### Sixth Affirmative Defense
(No Class Action)

Plaintiff's claims are barred because they cannot satisfy any or all of the requirements for maintaining a class action under Rule 23 of the Federal Rules of Civil Procedure because, among other reasons, questions of fact relating to each individual proposed class member predominate over the questions relating to the class, including but not limited to (a) whether each individual was allegedly contacted by TIB or on TIB's behalf; (b) whether each individual or an agent of that individual provided consent prior to contact; (c) whether each individual wanted to receive the calls or had requested to receive the calls; and (d) who was the owner or regular user of each telephone number called at the time each message was allegedly played.

### Seventh Affirmative Defense
(Unjust Enrichment)

Plaintiff's Complaint, and the purported cause of action set forth therein, is barred because the relief sought by Plaintiff would, if granted, unjustly enrich Plaintiff.

### Eighth Affirmative Defense
(Adequate Remedy at Law)

Plaintiff's injunction remedy is barred in light of the fact that Plaintiff and the putative class members have an adequate remedy at law.

### Ninth Affirmative Defense
(No Willful or Knowing Violation)

To the extent that Plaintiff or the putative class seek treble damages under the TCPA, they offer no basis for the discretionary trebling of the statutory damages. Even if the allegations in the Complaint were true, which is denied, discretionary trebling of statutory damages by this Court is unwarranted based on the allegations.

### Tenth Affirmative Defense
(*De* minims harm, if any)

Plaintiff's and the putative class members' alleged recovery are barred to the extent they have not suffered any damages and/or by the doctrine of de *minimis* harm.

### Eleventh Affirmative Defense
(Failure to Mitigate)

If any alleged damages exist (which TIB denies), Plaintiff and the putative class members failed to mitigate their alleged damages and, therefore, recovery must be reduced or denied.

### Twelfth Affirmative Defense
(Bar on multiple recoveries)

To the extent any relief sought by plaintiff would be duplicative of relief sought by other plaintiffs in other lawsuits subjecting TIB to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendments to the United States Constitution.

### Thirteenth Affirmative Defense
(Constitutionality of Statutory Damages)

The TCPA provides for statutory damages of $500 to $1,500 for each violation of the law. When directed at calls, statutory damages under the TCPA can quickly rise to millions of dollars for alleged actions that cause little to no actual damages to Plaintiff or other individuals and such a calculation would be excessive, improper, and unreasonable. Statutory damages would constitute an excessive fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution.

### Fourteenth Affirmative Defense
(Lack of Standing)

To establish standing under Article III of the United States Constitution, Plaintiff and the proposed class must show concrete and particularized invasion of a legally protected interest. To the extent that Plaintiff and members of the proposed class have not paid money, lost title to goods of value, or suffered any other concrete or particularized harm as a result of the conduct alleged, and/or that Plaintiff is a "professional plaintiff" who seeks out alleged TCPA violations for his personal profit, Plaintiff and/or members of the proposed class lack standing to bring this suit under Article III of the United States Constitution.

### Fifteenth Affirmative Defense
(Unclean Hands)

Plaintiff's claims and those of the putative class are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto* because, on information and belief, Plaintiff invited the calls on which he now seeks liability.

### Sixteenth Affirmative Defense
(Additional Defenses)

TIB expressly and specifically reserves the right to amend this Answer to add, delete, or modify affirmative defenses based on legal theories, facts and circumstances that may or will be

developed through discovery or further legal analysis of Plaintiff's and the putative class's claims and TIB's position in this litigation.

Dated: April 16, 2021

Respectfully Submitted,

By:    */s/ Cory W. Eichhorn*
Cory W. Eichhorn
Florida Bar No. 576761
cory.eichhorn@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL  33131
Telephone:  (305) 374-8500

and

Anthony J. Palermo
Florida Bar No. 98716
anthony.palermo@hklaw.com
Holland & Knight LLP
100 North Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500

*Attorneys for Defendant*
*Total Insurance Brokers, LLC*